```
              UNITED STATES DISTRICT COURT
                DISTRICT OF CONNECTICUT
```

MICHAEL CASTILLO,
      Plaintiff,

  v.

                                CASE NO. 3:14-1166 (AWT)
HOGAN, ET AL.,
      Defendants.

## ORDER

    The plaintiff, who is currently incarcerated at MacDougall-Walker Correctional Institution in Suffield, Connecticut, filed this Complaint pursuant 42 U.S.C. § 1983 against Correctional Officers Hogan, Cossette, Pereira, Johnson, Cummings, Franklin, Demoria, Avery, Debueno, Granatta, Santini, Kelly, Papoosha, Mulligan and Faraci, Lieutenants Smith, Wilkins, Mollin, Ebele, Wardens Alves and Brighthaupt, Grievance Coordinators Petterson, Crandall, Captain Watson and Baker, Deputy Wardens Agers and Powers, Counselor Supervisor Garcia, Counselors Albino and Moore, Correctional Officers John Doe #1, John Doe #2 and John Doe #3, Lieutenant John Doe #1 and Lieutenant John Doe # 2, Jane Doe #1, Jane Doe #2, Jane Doe #3, Jane Doe #4, Nurse Vickie Garcia, Nursing Supervisor C. Durato, Medical Supervisor B. Stewart, Medical Grievance Coordinator Sheryl Estrom, Michael Lajoie, Forest, Ricardo Ruiz, S. Brown, Fitzner and K. Butricks.

    Pursuant to 28 U.S.C. § 1915A(b), the court must review prisoner civil complaints against governmental actors and

"dismiss ... any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." *Id*. Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.

A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,' " does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). Although courts still have an obligation to liberally construe a *pro se* complaint, *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), the complaint must include sufficient factual allegations to meet the standard of facial plausibility.

**I.   Failure to Comply with Federal Rule 8**

The first defect with the Complaint is that it does not comply with Rule 8's pleading requirements.  Rule 8(a)(2), Fed. R. Civ. P., requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 8(d)(1) provides that "[e]ach allegation must be simple, concise and direct."  The purpose of Rule 8 is "to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery."  *Ricciutti v. New York Trans. Auth.*, 941 F.2d 119, 123 (2d Cir. 1991) (citation omitted).  In addition, "the rule serves to sharpen the issues to be litigated and to confine discovery and the presentation of evidence at trial within reasonable bounds."  *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (citation and quotation omitted).  The plaintiff's statement of his claim "should be short because "[u]nnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage."  *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (quoting 5 C. Wright & A. Miller, <u>Federal Practice and Procedure</u> § 1281, at 365 (1969)).

When a litigant does not comply with Rule 8's requirements, the court may strike any portion of the complaint that is redundant or immaterial pursuant to Rule 12(f), Fed. R. Civ. P. Alternatively, it may dismiss the complaint in its entirety in those cases "in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Saluddin*, 861 F.2d at 42. In *Saluddin* for example, the Second Circuit, found "no doubt" that plaintiff's complaint, which "span[ned] 15 single-spaced pages and contain[ed] explicit descriptions of 20-odd defendants, their official positions, and their roles in the alleged denials of Salahuddin's rights, failed to comply with Rule 8's requirement of a "short and plain statement." *Id.* at 43. Accordingly, the court stated that "the district court was within the bounds of discretion to strike or dismiss the complaint for noncompliance with Rule 8." *Id.*

In this case, the plaintiff's Complaint is neither "short and plain" nor "simple, concise and direct." The Complaint consists of forty-six single-spaced, typed pages containing 487 paragraphs. The Complaint refers to a time period from January 2011 to January 2014, and includes at least five different claims involving forty-nine defendants.

4

### A.   Claim One - Medical Treatment

The plaintiff alleges that in January 2011 at Cheshire Correctional Institution, he became ill with a severe nasal infection. The plaintiff claims that defendants Officers John Doe #1, John Doe #2, Lieutenants John Doe # 1 and John Doe #2, Jane Doe #1, Jane Doe #2, Jane Doe #3 and Nurse Vickie Garcia, failed to either treat him for his condition or arrange for treatment of the condition.

On February 17, 2011, defendants Hogan, Johnson, Smith and John Doe #3 placed the plaintiff in the restrictive housing unit in connection with an investigation into gang activity. The plaintiff was held in the restrictive housing unit for a week. Although the plaintiff repeatedly complained about his medical condition, none of these defendants attempted to arrange for medical treatment for the plaintiff.

Dr. Ruiz examined the plaintiff on March 7, 2011 and diagnosed him as suffering from allergies. Dr. Ruiz ordered x-rays and prescribed medication to treat the plaintiff's condition. The plaintiff complained about his condition and the fact that the medication was not helping to treat the condition, but defendant Ruiz failed to listen to the plaintiff. The plaintiff made defendants Durato, Stewart, Brown, Estrom and

Jane Doe #3 aware of his medical condition, but they failed to take action to arrange for or provide medical treatment.

Dr. O'Halloran examined the plaintiff on July 19, 2012 and diagnosed him as suffering from a severe nasal infection. He prescribed medication which successfully cured the plaintiff's infection.

### B.   Claim Two - Retaliation

On February 24, 2011, defendants Hogan, Johnson, and Smith escorted the plaintiff into a room to be questioned about gang activity. The plaintiff denied all knowledge of any misconduct, invoked his Fifth Amendment right not to answer any questions and refused to cooperate in the investigation. Defendants Hogan, Johnson, and Smith informed the plaintiff that he would regret his decision not to cooperate and threatened to make the plaintiff's time in prison difficult. Defendants Hogan, Johnson and Smith then sent the plaintiff back to the restrictive housing unit.

At some point after the plaintiff's release from restrictive housing to general population, defendant Faraci called the plaintiff to the property room and the plaintiff was told that he had to send his religious necklace home. The plaintiff had never had an issue with his religious necklace in

Case 3:14-cv-01166-VAB   Document 8   Filed 01/26/15   Page 7 of 16

the past.  Defendant Feraci suggested that the reason the plaintiff could not keep his religious necklace was because he had made other correctional officials angry.  Defendants Baker, Agers and Alves refused to take corrective action after being informed of the confiscation of the plaintiff's necklace.

The plaintiff was initially not permitted to have a job after his release from the restrictive housing unit.  On February 28, 2011, defendant Baker arranged for the plaintiff to start working as a barber again.

In early March 2011, defendants Cummins and Franklin informed the plaintiff he was moving to another unit.  The plaintiff was upset because it meant he would lose his job. Defendants Cummings and Franklin suggested that the move had been ordered in retaliation for the plaintiff's failure to cooperate in the investigation by defendants Hogan, Johnson and Smith.  Defendant Baker subsequently moved the plaintiff back to his old housing unit and permitted him to work as a barber again.

Two weeks later, defendants Demoria and Cummings moved the plaintiff back to a different housing unit.  Defendant Brighthaupt agreed with the move and the decision not to give the plaintiff a job.

Officers subsequently moved the plaintiff to a different housing unit. The plaintiff signed up for education courses, but officers denied him placement in the courses. The plaintiff failed to receive responses to his grievances from defendants Powers or Petterson.

In July 2012, officers placed the plaintiff in the restrictive housing unit. Defendants Avery and Debueno packed and processed the plaintiff's property. They told him that he would have to send one of his electronic devices home. The plaintiff chose to send his Game Boy device home and keep his Nintendo.

On July 9, 2012, the plaintiff was released from the restrictive housing unit and found that several items of personal property were missing from his cell. Defendant Feraci suggested that he might have discarded some of the plaintiff's property due to grievances filed by the plaintiff against his co-workers.

**C.   Legal Mail**

During the plaintiff's confinement in the restrictive housing unit, he received two boxes of legal documents related to his criminal trial. Defendants Crandall and Granatta

8

reviewed the documents to make sure no contraband was present and told the plaintiff he must chose one box to put in storage.

Plaintiff's attorneys attempted to retrieve a box of legal documents that had been placed in storage pursuant to an arrangement with the plaintiff, but prison officials denied them access to the documents.  Defendant Santini later informed the plaintiff that no one had picked up the box and that the plaintiff must dispose of it or it would be destroyed.  The box had been opened and was half empty.  Plaintiff's attorneys attempted again to pick up the box, but prison officials denied them access to it.  Defendants Moore and Watson refused to document the damage to the box of legal documents.

In April 2013, defendants Hogan, Brighthaupt, Mollin, Kelly and Papoosha met with the plaintiff about a letter sent in an envelope marked legal mail.  Because the mail was not legal mail and due to an alleged threat made by the plaintiff, defendant Hogan issued an order to send the plaintiff to segregation.  The plaintiff claims that intelligence officers and other correctional officers continually harassed him, shook down his cell and left his cell in disarray.

On several occasions in January 2014, defendant Forest refused to permit the plaintiff to call the legal investigator

his attorney had hired.  Defendant Garcia also refused the plaintiff's requests to make legal calls to the investigator.  Defendant Garcia had opened plaintiff's legal mail on one occasion in June 2013 outside of the plaintiff's presence.

The plaintiff claims that on January 16, 2014, prison officials at Cheshire transferred him to MacDougall Correctional Institution.  He claims that the transfer was made due to his attempts to file grievances about his legal mail.

**D.   Religious Beliefs**

On April 24, 2013, when the plaintiff arrived in the restrictive housing unit, defendants Mollin and Mulligan performed a strip-search of the plaintiff.  At that time, the plaintiff was wearing his religious necklace.  Defendant Mollin ordered the plaintiff to remove the necklace, but the plaintiff refused.  Defendant Mulligan issued the plaintiff a disciplinary ticket for refusing to remove his religious necklace.  Defendant found the plaintiff guilty after a disciplinary hearing.

On October 4, 2013, defendant Wilkins and Pereira performed a strip-search of the plaintiff and ordered him to remove his religious necklace.  When the plaintiff refused to remove the necklace, defendant Pereira issued the plaintiff a disciplinary ticket.  The plaintiff received a hearing and presented evidence

to show that the necklace was an important part of his sincerely held religious beliefs. Defendant Ebele was the disciplinary hearing officer. The plaintiff pleaded guilty without prejudice because he knew defendant Ebele would not rule in his favor.

### E.   Disciplinary Reports

In April 2013, the plaintiff received a hearing on the disciplinary report that had been issued by defendant Mulligan because he refused to take off his religious necklace. The plaintiff presented evidence to show that the necklace was an important part of his sincerely held religious beliefs. Defendant Jane Doe #4 was the disciplinary hearing officer. She spoke to defendant Brighthaupt after the plaintiff had presented his evidence. She then informed the plaintiff that defendant Brighthaupt had pressured her and she must find him guilty.

The plaintiff appealed the guilty finding. Defendant Lajoie upheld the finding.

In October 2013, defendant Wilkins ordered that the plaintiff be sent to the restrictive housing unit after taking cookies from the plaintiff's pocket. The plaintiff received a disciplinary report for failing to return to his unit and for challenging defendant Wilkins' authority and a disciplinary report for refusing to remove his religious necklace. Defendant

11

Moore was the plaintiff's advocate for both disciplinary tickets, but refused to review the videotape of the incident. Defendants Cossette and Ebele denied the plaintiff due process during the disciplinary hearing. The plaintiff pleaded guilty without prejudice. Defendant Ebele found the plaintiff guilty and imposed numerous sanctions. The plaintiff appealed the guilty finding. Defendant Brighthaupt upheld the finding and sanctions.

### F.  Failure to Process Grievances

The plaintiff generally asserts that defendants Petterson, Crandall, Estrom, Durato, Brown, Stewart, Fitzner and Powers either ignored or failed to process his grievances according to Department of Correction Administrative Directives. The plaintiff alleges that this conduct denied him access to courts.

## II.  Failure to Comply with Joinder Rule

The plaintiff's multiple allegations involve claims of conditions of confinement, access to courts, confiscation of property and legal documents, deprivation of a prison job, adequacy of administrative remedies, interference with religious practices and beliefs, violations of procedural due process, unauthorized opening of legal mail and retaliatory conduct by prison officials. The plaintiff contends that the defendants

12

have violated the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments as well as the Religious Land Use and Institutionalized Persons Act, ("RLUIPA") 42 U.S.C. § 2000cc, et seq.  In addition to claims under 42 U.S.C. § 1983, the plaintiff alleges that the defendants have violated 42 U.S.C. §§ 1985 and 1986.  The plaintiff also asserts state law claims.  The multiple claims included in the Complaint are not all related to each other and involve different defendants.

Thus, the Complaint also fails to comply with the requirements of Fed. R. Civ. P. 20 governing party joinder.  Rule 20(a)(2) permits the joinder of multiple defendants in a single action if two criteria are met: (1) the claims "aris[e] out of the same transaction, occurrence, or series of transactions and occurrences"; and (b) "any questions of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P. 20(a)(2).  What will constitute the same transaction or occurrence under the first prong of Rule 20(a) is approached on a case by case basis."  *Kehr ex rel. Kehr v. Yamaha Motor Corp., U.S.A.*, 596 F. Supp. 2d 821, 826 (S.D.N.Y. 2008) (citation omitted).  As the Second Circuit has observed in the Rule 13 context,[1] whether a counterclaim arises out of the same

---

[1] "In construing the term 'transaction or occurrence' under

transaction as the original claims depends upon the logical relationship between the claims and whether the "essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Harris v. Steinem*, 571 F.2d 119, 123 (2d Cir. 1978).

The plaintiff's various conditions of confinement claims, religious practice claims, procedural due process claims, access to courts claims, retaliation claims, medical claims and grievance procedure claims all occurred at Cheshire over a three-year period. These different claims, however, do not all "aris[e] out of the same transaction, occurrence or series of transactions and occurrences. Fed. R. Civ. P. 20(1)(2). Thus, Complaint also fails to comply with Rule 20.[2]

The Second Circuit has expressed a preference for

---

Rule 20, many courts have drawn guidance from the use of the same term in Rule 13(a), applying to compulsory counterclaims." *Barnhart v. Town of Parma*, 252 F.R.D. 156, 160 (W.D.N.Y. 2008) (citation omitted); *see also* 7 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1653 (3d ed.).

[2] In addition to the fact that the claims in the Complaint do not all arise out of the same transaction or occurrence and do not all involve common questions of law and fact, each claim will require different witnesses and documentary proof and a jury might be confused and the defendants would be prejudiced by the inclusion of these disparate claims in a single action. *See Morris v. Northrup Grumman Corp.*, 37 F. Supp. 2d 556, 580 (E.D.N.Y. 1999); *German v. Federal Home Loan Mortgage Corp.*, 896

adjudicating cases on their merits.  Thus, it will generally find failure to grant leave to amend a complaint an abuse of discretion where the sole ground for dismissal is that the complaint does not constitute a short and concise statement or comply with the rules governing joinder.  *See e.g., Saluhuddin*, 861 F.2d at 42.

## Conclusion

Accordingly, the plaintiff is hereby directed to file an amended complaint that complies with Rules 8 and 20 of the Federal Rules of Civil Procedure.  The Clerk shall send the plaintiff an amended complaint form and a copy of the Complaint [Doc. No. 1] with this order.

**The plaintiff's amended complaint should only include ONE claim and shall be filed on the amended complaint form**.  The plaintiff may pursue his other claims in separate actions.

The plaintiff shall clearly and concisely state his claim and explain how each defendant is involved in the claim.  If the amended complaint fails to comply with the instructions in this order or the amended complaint form or the requirements of Rules 8 and 20 of the Federal Rules of Civil Procedure, the action

---

F. Supp. 1385, 1400 (S.D.N.Y. 1995).

will be subject to dismissal with prejudice.  **The amended complaint will be due in forty-five days.**

It is so ordered.

Signed this 23rd day of January 2015, at Hartford, Connecticut.

/s/AWT
Alvin W. Thompson
United States District Judge
