MICHAEL CASTILLO,
      Plaintiff,

      v.

J. HOGAN, *et al.*,
      Defendants.

No. 3:14-cv-1166 (VAB)

### RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Michael Castillo ("Plaintiff"), currently incarcerated at Corrigan-Radgowski Correctional Institution, in Uncasville, Connecticut, and proceeding *pro se*, has sued various individual employees of the Connecticut Department of Correction for denying him appropriate medical treatment under the Eighth Amendment and retaliation under the Fifth Amendment to the U.S. Constitution.

Defendants now move for summary judgment.

For the following reasons, the motion is **GRANTED** in part and **DENIED** in part.

# I. FACTUAL AND PROCEDURAL BACKGROUND

## A. Factual Allegations[1]

On January 31, 2011, Mr. Castillo submitted a request to receive medical treatment. Pl.'s L.R. 56(a)2 Stmt., ¶ 12, ECF No. 54; Mem. Opp'n Mot. Summ. J., Ex. E, ECF No. 53 at 96. He complained that his nose had been congested for three weeks and he was having trouble breathing. Mem. Opp'n Mot. Summ. J., Ex. E, ECF No. 53, at 96. Mr. Castillo stated that he thought that he might have a nasal infection. *Id.* On February 3, 2011, a nurse examined Mr. Castillo and referred Mr. Castillo to see a physician for further evaluation. Defs.' L.R. 56(a)1 Stmt., ¶ 8, ECF No. 48-2.

On February 11, 2011, Mr. Castillo completed and submitted a Health Services Review request regarding diagnosis of and treatment for his nasal congestion and symptoms associated with that condition. *Id.*, Attach. 3 at 6–7, ECF No. 48-6. In it, he noted that the decongestant and allergy tablets that the nurses had given to him had not relieved his symptoms. *Id.* at 7.

On February 14, 2011, in response to Mr. Castillo's complaint that he had not been seen by the medical department for almost two weeks, Lieutenant Bernard asked a nurse in the medical department whether Mr. Castillo was scheduled to see a physician. *Id.*, Attach. 1 at 62, ECF No. 47; Pl.'s L.R. 56(a)2 Stmt., ¶¶ 10–12, ECF No. 54. A nurse informed Lieutenant Bernard that Mr. Castillo had been examined by the nursing staff and was on the list to see a

---

[1] The following facts, taken from Defendants' Local Rule 56(a)1 Statement, ECF No. 48-2; Attachments in support of the Defendant's Local Rule 56(a)1 Statement, ECF Nos. 48-4 through 48-7 & ECF No. 47; Mr. Castillo's Local Rule 56(a)2 Statement, ECF No. 54; Exhibits in support of Mr. Castillo's Memorandum in Opposition to the Motion for Summary Judgment Statement, ECF No. 53; Mr. Castillo's Affidavit, ECF No. 53-1; and his sworn Second Amended Complaint, ECF No. 35, are undisputed unless otherwise noted. Additional facts are discussed in the analysis where relevant.

physician on February 17, 2011. *Id.*, Attach. 1 at 62, ECF No. 47; Pl.'s L.R. 56(a)2 Stmt., ¶ 13, ECF No. 54.

On February 15, 2011, Nurse/Medical Grievance Coordinator Vickie Garcia received Mr. Castillo's Health Services Review request dated February 11, 2011. *Id.*, Attach. 1 at 62, ECF No. 47; Attach. 3 at 6–7, ECF No. 48-6. She noted that Mr. Castillo was on the list to be seen by a physician on February 17, 2011. *Id.*, Attach. 1 at 62, ECF No. 47. Mr. Castillo did not go to his medical appointment on February 17, 2011. *Id.*, Attach. 1 at 62, ECF No. 47; Pl.'s L.R. 56(a)2 Stmt., ¶ 13, ECF No. 54. Medical staff re-scheduled Mr. Castillo's appointment to see a physician. Defs.' L.R. 56(a)1 Stmt., ¶ 12, ECF No. 48-2.

The same day as the originally scheduled appointment, prison officials placed Mr. Castillo in the restrictive housing unit due to an investigation into gang activity at Cheshire. Pl.'s L.R. 56(a)2 Stmt., ¶ 15, ECF No. 54; Pl.'s Aff., ¶ 16, ECF No. 53-1; Defs.' L.R. 56(a)1 Stmt., Attach. 1 at 60–61, ECF No. 47. On February 24, 2011, Officers Hogan and Johnson and Lieutenant Smith questioned Mr. Castillo in connection with the investigation. Pl.'s Aff., ¶ 24, ECF No. 53-1. Mr. Castillo refused to answer any questions or cooperate with the investigation. *Id.* During his week-long confinement in the restrictive housing unit as well as during the interrogation, Mr. Castillo informed Officers Hogan and Johnson and Lieutenant Smith that Mr. Castillo was ill and in need medical treatment, but they allegedly refused to arrange for treatment. *Id.*, ¶¶ 17, 24–25. Prison officials released Mr. Castillo from the restrictive housing unit on February 24, 2011. Defs.' L.R. 56(a)1 Stmt., Attach. 2 at 6, ECF No. 48-5.

On March 7, 2011, Dr. Ruiz examined Mr. Castillo in response to his complaints of sinus congestion, nasal discharge, and a bad smell in his nose. Defs.' L.R. 56(a)1 Stmt. ¶ 13, ECF No.

48-2; Attach. 1 at 62, ECF No. 47; Attach 3 at 7, ECF No. 48-6. Dr. Ruiz noted that Mr. Castillo

had been treated for a nasal fracture in 2002 at Hartford Hospital. *Id.*, Attach. 1 at 62, ECF No.

47. Dr. Ruiz ordered that Mr. Castillo undergo x-rays of his sinuses and indicated that he would

follow-up with Mr. Castillo. *Id.*, Attach. 1 at 62, ECF No. 47; Attach. 3 at 7, ECF No. 48-6.

On April 11, 2011, Dr. Ruiz noted that the x-rays of Mr. Castillo's sinuses were negative

and showed no air fluid levels. Dr. Ruiz prescribed a nasal spray to be used twice a day for

ninety days, medication for pain to be used for ninety days, and referred Mr. Castillo for lab

work. *Id.*, Attach. 1 at 59, ECF No. 47.

On May 5, 2011, a nurse examined Mr. Castillo for an injury to his jaw. *Id.* On June 3,

2011, a nurse examined Mr. Castillo due to his complaints of hives on his body. *Id.* at 58. The

nurse prescribed Benadryl to treat Mr. Castillo's symptoms. *Id.*

On July 3, 2011, Dr. Ruiz examined Mr. Castillo due to his complaints of sinus

congestion. *Id.*, Ex. D, ECF No. 53 at 91. Dr. Ruiz observed nasal discharge and that Mr. Castillo

moved air well through his nose. *Id.* He referred Mr. Castillo for sinus x-rays to determine the

existence of air fluid levels in Mr. Castillo's nasal passages. *Id.* He noted that, if air fluid levels

were present, he would prescribe an antibiotic. *Id.* He recommended that Mr. Castillo return to

be seen by a physician in a week. *Id.*

On May 14, 2012, in response to Mr. Castillo's inmate request, Nurse Boiano examined

Mr. Castillo due to his complaints of nasal congestion and nasal discharge. *Id.*, Attach. 3 at 3,

ECF No. 48-6. Nurse Boiano noted that Mr. Castillo had requested that a physician renew his

prescription for nasal spray. *Id.*, Attach. 1 at 57, ECF No. 47. Nurse Boiano distributed allergy

tablets to Mr. Castillo, placed him on a list to see a physician and left a note for Dr. Ruiz to

renew the prescription for nasal spray. *Id.*

On May 15, 2012, a nurse examined Mr. Castillo in response to his claim that he was experiencing an allergic reaction to medication. *Id.* The nurse concluded that Mr. Castillo had not suffered from an allergic reaction. *Id.* at 56-57. The nurse noted a bruise on the back of one of Mr. Castillo's thighs and advised Mr. Castillo to contact the medical department if the bruise did not resolve. *Id.* On May 17, 2012, Dr. Ruiz renewed the prescription for nasal spray for ninety days. Mem. Opp'n Mot. Summ. J., Ex. D, ECF No. 53, at 78. At the end of May 2012, Dr. Ruiz prescribed Claritin to Mr. Castillo for ninety days. *Id.* at 82.

On June 6, 2012, Mr. Castillo submitted a Health Services Review request regarding the diagnosis of and treatment for his nasal condition. *Id.*, Ex. B, ECF No. 53 at 54-55. He stated that a nurse had examined him on May 14, 2012, had diagnosed him as suffering from allergies and had put him on the list to see a physician. *Id.* Mr. Castillo indicated that he was filing a grievance because it had been almost three weeks and he had not been examined by a physician. *Id.* Mr. Castillo indicated that he was experiencing nasal discharge, headaches, and congestion in his ears. He sought treatment from an ear, nose, and throat doctor. *Id.*

In response to the Health Services Review request, Medical Grievance Coordinator Sheryl Estrom met with Mr. Castillo on June 21, 2012. *Id.* She explained the difference between allergies and a sinus infection and noted that she would refer Mr. Castillo to a physician for diagnosis and treatment. *Id.*

On July 19, 2012, Dr. O'Halloran examined Mr. Castillo. *Id.* Mr. Castillo stated that he had experienced a foul smell and taste in his mouth and thick sinus discharge for more than a year and that antihistamines had only resulted in drier secretions. *Id.* The results of Mr. Castillo's

sinus x-rays were not available. *Id.* Dr. O'Halloran prescribed an anti-biotic to be taken for fourteen days to treat Mr. Castillo's sinus symptoms. *Id.* The anti-biotic alleviated Mr. Castillo's sinus congestion and associated symptoms. Pl.'s Aff., ¶ 34, ECF No. 53-1.

### B.    Procedural Background

Mr. Castillo filed a Complaint with this Court under 42 U.S.C. § 1983, asserting multiple claims against forty-nine employees of the Department of Correction. *See* Compl., ECF No. 1. On March 9, 2015, Mr. Castillo filed an Amended Complaint, naming Correctional Officers J. Hogan, Johnson, John Doe 1 and John Doe 2, Lieutenants Smith, John Doe 1 and John Doe 2, Warden Jon Brighthaupt, Deputy Warden Powers, Nurses Vickie Garcia, Jane Doe 1, Jane Doe 2 and Jane Doe 3, Nursing Supervisor C. Durato, Medical Supervisor B. Stewart, Medical Grievance Coordinator Sheryl Estrom, Dr. Ricardo Ruiz and Health Services Administrator S. Brown as defendants. *See* Am. Compl., ECF No. 10.

On April 30, 2015, under 28 U.S.C. § 1915A(b)(1), the Court dismissed all claims against Brighthaupt and Powers and concluded that the Eighth Amendment claims of deliberate indifference to medical needs and the state law claims of negligence/malpractice would proceed against all other defendants and the Fifth Amendment retaliation claim would proceed against defendants Smith, Hogan and Johnson. *See* Initial Review Order, ECF No. 11. On February 22, 2016, the Court granted Defendants' motion to dismiss as to all state-law claims and denied the motion as to the federal claims. *See* Ruling, ECF No. 27.

On May 31, 2016, Mr. Castillo filed a Second Amended Complaint to re-assert his claims against defendants Correctional Officers Hogan and Johnson, Lieutenant Smith, Dr. Ruiz, Nursing Supervisor Durato, Medical Supervisor Stewart, Medical Grievance Coordinator

Estrom, Health Services Administrator Brown and Nurse/Medical Grievance Coordinator Garcia[2] and to identify the Doe defendants as: Correctional Officer Mack, Correctional Officer Bartley, Correctional Officer Waterford, Lieutenant Guzman, Lieutenant John Bernard, Captain Bouffard, Nurse Pauline Husband and Nurse Kathy Saraceno. *See* Second Am. Compl., ECF No. 35. The Second Amended Complaint is the operative complaint.

Defendants now move for summary judgment.[3]

## II.    STANDARD OF REVIEW

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," and is "genuine" if "a reasonable jury could return a verdict for the nonmoving party" based on it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the nonmoving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted). Thus, the party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.*

---

[2] In the Second Amended Complaint, Mr. Castillo refers to defendant Vickie Garcia as both a nurse and a medical grievance coordinator. *See* Second Am. Compl., ECF No. 35 at ¶ 6; at 7 ¶ 19.

[3] Consistent with Local Rule 56(B), Defendants duly filed a "Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment."

In reviewing the record, the court must "construe the evidence in the light most favorable to the non-moving party and to draw all reasonable inferences in its favor." *Gary Friedrich Enters., L.L.C. v. Marvel Characters, Inc.*, 716 F.3d 302, 312 (2d Cir. 2013) (citation omitted). If there is any evidence in the record from which a reasonable factual inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, however, summary judgment is improper. *See Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

Where one party is proceeding *pro se*, the court reads the *pro se* party's papers liberally and interprets them "to raise the strongest arguments that they suggest." *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) (internal quotation marks and citation omitted). Despite this liberal interpretation, however, "[u]nsupported allegations do not create a material issue of fact" and cannot overcome a properly supported motion or summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

## III. DISCUSSION

Defendants assert three arguments in support of their motion. They contend that: (1) the retaliation claim and the medical treatment claim are barred by the statute of limitations; (2) the medical treatment and retaliation claims are not exhausted; and (3) they were not deliberately indifferent to Mr. Castillo's serious medical need.

### A. Exhaustion of Administrative Remedies

Defendants argue that Mr. Castillo failed to properly exhaust his administrative remedies as to the retaliation claim because he filed a grievance more than thirty days after the alleged retaliatory conduct occurred. Mr. Castillo argues that Defendants waived their claim that he did

not properly exhaust his administrative remedies. The Court agrees.

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires an inmate to exhaust all "administrative remedies as are available" before bringing an "action . . . with respect to prison conditions." The Supreme Court held that this provision requires an inmate to exhaust administrative remedies before filing any type of action in federal court, *see Porter v. Nussle*, 534 U.S. 516, 532 (2002), regardless of whether the inmate may obtain the specific relief he desires through the administrative process. *See Booth v. Churner*, 532 U.S. 731, 741 (2001).

Furthermore, the PLRA requires "proper exhaustion" which includes complying with all "procedural rules," including filing deadlines, as defined by the particular prison grievance system. *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006). Thus, "untimely or otherwise procedurally defective attempts to secure administrative remedies do not satisfy the PLRA's exhaustion requirements." *Ruggiero v. County of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) (quoting *Woodford*, 548 U.S. at 83–84).

In *Ross v. Blake*, ___ U.S. ___, 136 S. Ct. 1850 (2016), the Supreme Court rejected the judicially created special exceptions to the exhaustion requirement of the PLRA. *See id.* at 1362 ("Courts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement."). The Court concluded that the PLRA includes a single "textual exception"—that an inmate must only exhaust remedies that are "available." *Id.* at 1858. Thus, aside from the availability of remedies to a prisoner, there are "no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.'" *Id.* at 1856. The Supreme Court described three scenarios in which administrative procedures are officially adopted by a prison facility but are not capable of use to obtain relief for the conduct complained about, and

therefore are unavailable. *Id.* at 1859. First, an administrative remedy may be unavailable when "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use" because an "ordinary prisoner can[not] discern or navigate it" or "make sense of what it demands." *Id.* (citations omitted). Third, an administrative remedy may be unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

Failure to exhaust administrative remedies under 42 U.S.C. § 1997e(a) is an affirmative defense. *See Jones v. Bock*, 549 U.S. 199, 215 (2007). Thus, Defendants have the burden to prove that Mr. Castillo has not exhausted his claim prior to filing this action. *See Johnson v. Mata*, 460 Fed. App'x 11, 15 (2d Cir. 2012) ("The defendants have the burden of showing that there is no genuine issue of material fact as to exhaustion that would preclude summary judgment.").

The administrative remedies for the State of Connecticut Department of Correction are set forth in Administrative Directive 9.6, entitled Inmate Administrative Remedies. *See* Defs.' L.R. 56(a)1 Stmt., Attach. 4, ECF No. 48-7 (Administrative Directive 9.6, Effective January 31, 2009). The type of remedy available to an inmate depends on the nature of the issue or condition experienced by the inmate or the decision made by correctional personnel. For all matters relating to any aspect of a prisoner's confinement that are subject to the Commissioner's authority and that are not specifically identified in Sections 4(B) through 4(I) of Administrative Directive 9.6, the applicable remedy is the Inmate Grievance Procedure set forth in subsection

(6). Thus, claims regarding conditions of confinement are subject to the Inmate Grievance Procedure.

Under Administrative Directive 9.6(6), an inmate must first attempt to resolve the matter informally. The inmate may attempt to verbally resolve the issue with an appropriate staff member or supervisor. *See id.* at 9.6(6)(A). If attempts to resolve the matter orally are not effective, the inmate must make a written attempt using a specific form and send that form to the appropriate staff member. *See id.* If all attempts to resolve the matter informally are unsuccessful, an inmate may file a Level 1 grievance. *See id.* at 9.6(6)(C).

The Level 1 grievance must be filed within thirty calendar days from the date of the occurrence or discovery of the cause of the grievance and should include a copy of the response to the written request to resolve the matter informally or explain why the response is not attached. *See id.* The Unit Administrator shall respond in writing to the Level 1 grievance within thirty business days of his or her receipt of the grievance. *See id.* at 9.6(6)(I).

The inmate may appeal the disposition of the grievance by the Unit Administrator or the Unit Administrator's failure to dispose of the grievance in a timely manner to Level 2. *See id.* at 9.6(6)(G) & (I). The Level 2 appeal must be filed within five calendar days from the inmate's receipt of the decision on the Level 1 grievance. *See id.* at 9.6(K).

Level 2 appeals of inmates confined in Connecticut correctional facilities are reviewed by the appropriate District Administrator. *See id.* at 9.6(6)(K). The District Administrator should respond to the Level 2 appeal within thirty business of receipt of the appeal. *See id.*

Level 3 appeals are restricted to challenges to department policy, the integrity of the grievance procedure or level 2 appeals to which there has been an untimely response by the

District Administrator. *See id.* at 9.6(6)(L). A Level 3 appeal must be filed within five calendar days from the inmate's receipt of the decision on the Level 2 appeal. *See id.* A Level 3 appeal is reviewed by the Commissioner of Correction or his or her designee. *See id.*

Administrative remedies were "officially on the books" at the time of the incidents described in the Second Amended Complaint. *Ross*, 136 S. Ct. at 1859. Mr. Castillo's retaliation claim falls within matters that were grievable under the Inmate Grievance Procedure. *See id.* Thus, administrative remedies were available to Mr. Castillo.

## 1.    Medical Claim

Defendants contend that Mr. Castillo did not properly exhaust his claims regarding medical treatment during the period from March 2011 to July 2012 because Mr. Castillo failed to appeal a June 9, 2012 Health Services Review request, consistent with Administrative Directive 9.6. Mr. Castillo argues that medical treatment claims are governed by Administrative Directive 8.9, not 9.6, and thus his medical claim is duly exhausted. Mr. Castillo has raised a triable fact as to which directive applies and whether he exhausted under that directive.

Defendants state that the Department of Correction's grievance procedures are set forth in Administrative Directive 9.6. Administrative Directive 9.6 reflects that the Department of Correction has implemented a separate grievance procedure for claims arising from medical diagnoses and treatment of inmates as well as claims regarding inmate health care practices, procedures, administrative provisions or policies, and claims pertaining to improper conduct by a health services provider. *See* Defs.' L.R. 56(a)1 Stmt., Attach. 4, ECF No. 48-7 (Administrative Directive 9.6(4)(A) ("The Inmate Grievance Procedure [set forth in 9.6(6)] provides an administrative remedy for all matters subject to the Commissioner's authority that are not

specifically identified in Sections 4(B) through (I) of this Directive."); 9.6(4)(K) ("Request for review of any matter relating to the delivery of health care services shall be in accordance with Administrative Directive 8.9, Health Services Review."). Thus, the exhaustion procedures set forth in Administrative Directive 9.6(6) are not applicable to Mr. Castillo's medical treatment claim.

As discussed above, Defendants have only submitted Administrative Directive 9.6 in support of their motion for summary judgment, and they do not acknowledge Administrative Directive 8.9 in their memorandum in support of their motion for summary judgment or attach a copy of it to their Local Rule 56(a)1 Statement. Nor do Defendants address the exhaustion requirements set forth in Administrative Directive 8.9. As a result, Defendants have not met their burden of establishing that a grievance process existed or was available or how it applied to Mr. Castillo's medical claims. *See Hubbs*, 788 F.3d at 61 ("The burden . . . is on the defendant to establish at the outset that an administrative remedy was available in the sense that a grievance policy existed and covered the dispute at hand."). Thus, Defendants have not demonstrated the absence of a material fact in dispute with regard to whether Mr. Castillo exhausted his medical treatment/diagnosis claim or that they are entitled to judgment as a matter of law.

### 2.     Retaliation Claim

Defendants argue that Mr. Castillo has not fully or properly exhausted his available administrative remedies as to his retaliation claim before filing this lawsuit because he filed his Level 1 grievance more than thirty days after the alleged retaliatory conduct occurred. The Court disagrees.

Mr. Castillo alleges that, on February 17, 2011, Correctional Officers Hogan and Johnson and Lieutenant Smith placed him in the restrictive housing unit as part of an investigation into gang activity. On or about February 23, 2011, Correctional Officers Hogan and Johnson and Lieutenant Smith questioned Mr. Castillo, but Mr. Castillo refused to answer any questions. During the interrogation, Mr. Castillo asked Correctional Officers Hogan and Johnson and Lieutenant Smith for medical treatment of his sinus condition, but they denied the request. Mr. Castillo contends that Correctional Officers Hogan and Johnson and Lieutenant Smith denied his request for medical treatment in retaliation for his invoking his Fifth Amendment right not to answer questions about gang activity at Cheshire.

Mr. Castillo concedes that the Level 1 grievance filed on January 3, 2013 was untimely. He contends, however that Defendants have waived their exhaustion argument because the Level 1 reviewer did not reject the January 3, 2013 grievance as untimely, but instead resolved it on the merits. Thus, Mr. Castillo argues that he has exhausted his administrative remedies as to his retaliation claim. The Court agrees.

Courts have uniformly held that the exhaustion requirement under 42 U.S.C. § 1997e(a) is satisfied, if prison officials address and resolve a grievance on the merits despite the fact that it might not comply with procedural rules. *Reyes v. Smith*, 810 F.3d 654, 657 (9th Cir. 2016); *Whatley v. Warden*, 802 F.3d 1205, 1214–15 (11th Cir. 2015); *Hammett v. Cofield,* 681 F.3d 945, 947 (8th Cir. 2012); *Hill v. Curcione*, 657 F.3d 116,125 (2d Cir. 2011); *Reed-Bey v. Pramstaller,* 603 F.3d 322, 324–25 (6th Cir. 2010);*Conyers v. Abitz,*416 F.3d 580, 584 (7th Cir. 2005); *Camp v. Brennan*, 219 F.3d 279, 281 (3d Cir. 2000). The rationale for this requirement is that "when a state treats a filing as timely and resolves it on the merits . . . the grievance has

served its function of alerting the state and inviting corrective action." *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004).

Here, Mr. Castillo filed a Level 1 grievance on January 3, 2013. *See* Defs.' L.R. 56(a)1 Stmt., Attach. 2 at 6-7, ECF No. 48-5. The grievance referred to the retaliation incident in February 2011. *See id.* The Level 1 Reviewer decided the grievance on the merits. *See id.* at 6. Although that claim, as well as several other claims in the grievance, were untimely, the reviewer did not deny the grievance as failing to have been filed in a timely manner. *See id.* The Level 2 Reviewer also denied the Level 2 appeal of the Level 1 grievance on the merits and checked off the box that Mr. Castillo had exhausted his administrative remedies under Administrative Directive 9.6. *See id.* at 5.

Defendants do not acknowledge or address the Second Circuit's holding in *Hill. Hill*, however, is apposite. Accordingly, because the reviewing officials chose to reach the merits of Mr. Castillo's retaliation claim as asserted in his January 3, 2013 grievance and appeal of the grievance, rather than deny it on procedural grounds, the grievance is considered properly filed and the exhaustion requirement is satisfied. Mr. Castillo has raised a genuinely disputed issue of material fact as to the exhaustion of his retaliation claim.

### B.       Statute of Limitations

Defendants argue that Mr. Castillo's retaliation claim and the claim regarding the denial of medical treatment from January to July 18, 2011 are barred by the statute of limitations. Mr. Castillo contends that the limitations period should be tolled during that period as to both claims. The Court agrees.

A federal court looks to state law to determine the applicable statute of limitations in a

section 1983 action. *See Walker v. Jastremski*, 430 F.3d 560, 562 (2d Cir. 2005). The Second Circuit has held the general personal injury statute of limitations under Connecticut General Statutes § 52-577 should be applied to the filing of section 1983 claims arising in Connecticut. *See Lounsbury v. Jeffries*, 25 F.3d 131, 134 (2d Cir. 1994). Section 52-577 sets a three-year limitations period running from "the date of the act or omission complained of." Conn. Gen. Stat. § 52-577.

Although federal courts look to state law to determine the applicable statute of limitations for claims arising under § 1983, the court looks to federal law to determine when a federal claim accrues. *See Wallace v. Kato*, 549 U.S. 384, 388 (2007) ("[T]he accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law."). A federal cause of action accrues "when the plaintiff knows or has a reason to know of the harm or injury that is the basis of the action." *M.D. v. Southington Bd. of Educ.*, 334 F.3d 217, 221 (2d Cir. 2003) (internal quotation marks and citation omitted).

"Rules on tolling, revival, and application" are governed by state law. *Hardin v. Straub*, 490 U.S. 536, 539 (1989). Connecticut recognizes a continuing course of conduct doctrine that may toll the limitations period. *See Watts v. Chittenden*, 301 Conn. 575, 582–84 (2011). In order to establish the existence of a continuing course of conduct, a plaintiff must provide evidence that the defendant: (1) engaged in wrongful conduct against him or her; (2) owed him or her a continuing duty that was related to the alleged initial misconduct; and (3) continually breached that duty by engaging in subsequent misconduct towards him or her. *See Flannery v. Singer Asset Fin. Co., LLC*, 312 Conn. 286, 312–13 (2014) (citing *Witt v. St. Vincent's Medical Center*, 252 Conn. 363, 370 (2000)).

The Second Circuit has held that the applicable statute of limitations in a § 1983 action must be "tolled while a prisoner completes the mandatory exhaustion process" under 42 U.S.C. 1997e(a). *Gonzalez v. Hasty*, 651 F.3d 318, 323–24 (2d Cir. 2011). "[T]he date on which [the prisoner] first raised his administrative claims demarcates the commencement of the period of time during which he was actively exhausting those claims." *Id.* at 324. The burden to establish entitlement to equitable tolling falls on the plaintiff. *See Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007) ("The plaintiff bears the burden of showing that the action was brought within a reasonable period of time after the facts giving rise to the equitable tolling or equitable estoppel claim have ceased to be operational.") (internal quotation marks omitted)).

Mr. Castillo filed the Complaint on July 18, 2014, the day he signed it and presumably handed it to prison officials to be filed with the court. *See Dory v. Ryan*, 999 F.2d 679, 682 (2d Cir. 1993) (holding that a *pro se* prisoner complaint is deemed filed as of the date the prisoner gives the complaint to prison officials to be forwarded to the court) (citing *Houston v. Lack*, 487 U.S. 266, 270 (1988)). Counsel argues that the claims related to denials of medical treatment before July 18, 2011, as well as the retaliation claim relating to events that occurred in February 2011, are barred by the three-year statute of limitations. Mr. Castillo claims that the statute of limitations should be tolled during the time he was exhausting his administrative remedies as to his retaliation claim. He also argues that the continuous course of conduct doctrine is applicable to and tolls the limitations period as to his medical claims.

The Second Amended Complaint, as well as the memorandum and affidavit in opposition to Defendants' motion for summary judgment, describe two separate periods involving the lack of or improper treatment for his sinus condition. *See* Second Am. Compl. ¶¶ 1–15, ECF No. 35;

Pl.'s Aff. ¶¶ 1–34, ECF No. 53-1; Mem. Opp'n Mot. Summ. J., ECF No. 53 at 10. The first period began in January 2011 and concluded on March 7, 2011, when Dr. Ruiz examined Mr. Castillo in response to his complaints about his congested sinuses. This period involved Mr. Castillo's claims that he became ill with sinus congestion and the correctional personnel, the nurses and the medical grievance coordinator at Cheshire failed to provide him with treatment for this condition or schedule him to be treated by a physician. Mr. Castillo identifies the correctional personnel as Officers Hogan, Johnson, Mack, Bartley and Watford and Lieutenants Smith, Guzman and Bernard, the nurses as Kathy Saraceno and Pauline Husband and the Nurse/Medical Grievance Coordinator as Vickie Garcia.

The second period began after Mr. Castillo started taking the medication prescribed by Dr. Ruiz to treat his sinus congestion on April 11, 2011 and concluded on July 19, 2012, the day that Dr. O'Halloran prescribed an anti-biotic to treat Mr. Castillo's sinus congestion and other symptoms. The second period involved Mr. Castillo's claims that the medication prescribed by Dr. Ruiz was ineffective in alleviating his sinus congestion and associated symptoms. Mr. Castillo sought to have medical personnel re-evaluate his condition in order to properly diagnose it and to prescribe a treatment based on that diagnosis. The medical personnel allegedly involved in the second period of time were Dr. Ruiz, Nursing Supervisor Durato, Medical Supervisor Stewart, Health Services Coordinator Brown, Medical Grievance Coordinator Estrom, Nurse/Medical Grievance Coordinator Garcia and Nurse Saraceno. Mr. Castillo also asserts a claim against Captain Bouffard.

### 1. Medical Claim – Time Period from January to March 2011

Defendants argue that the claim involving the failure to treat Mr. Castillo's sinus

18

symptoms from January to July 18, 2011, is barred by the statute of limitations. Mr. Castillo argues that the continuing course of conduct doctrine tolls the statute of limitations for this period. The Court disagrees.

Although Mr. Castillo argues that he was under the continuing care of Dr. Ruiz from one period to another, he does not include any allegations that Dr. Ruiz violated his rights during the first treatment period. In fact, Mr. Castillo states that, after complaining about his sinus condition to various defendants during January and February 2011 and filing a Health Services Review request in February 2011, on March 7, 2011, Dr. Ruiz examined him and addressed his complaints about his sinus condition and referred him for an x-ray of his sinuses in order to diagnose his condition.

It is evident that each period involved a discrete set of facts and a discrete group of participants and a different type of deliberate indifference to medical needs claim. The claim in the first period may be characterized as a claim of denial of treatment for Mr. Castillo's sinus congestion and the claim in the second period may be characterized as a claim of improper diagnosis of and treatment for his condition. As a result, the continuing course of conduct doctrine is not suited to the claims in this case and does not toll the statute of limitations with regard to the allegations pertaining to the lack of medical care received by Mr. Castillo during the first period of time from January to March 7, 2011. Thus, the motion for summary judgment is granted because the allegations regarding the lack of treatment for Mr. Castillo's sinus condition during the time period from January 2011 to March 7, 2011 are barred by the statute of limitations. Accordingly, the claims of deliberate indifference to Mr. Castillo's medical needs during the period from January 2011 to March 7, 2011, against defendants Hogan, Smith,

Johnson, Garcia, Mack, Guzman, Bartley, Waterford, Husband, Bernard and Saraceno are dismissed.

### 2. Medical Claim - Time Period from April 2011 to July 2012

Defendants argue that the first three months of the second period in which Mr. Castillo contends they were deliberately indifferent to his sinus condition are barred by the statute of limitations. Mr. Castillo argues that he was engaged in actively exhausting his available remedies during this period. The Court agrees.

Mr. Castillo's medical records reflect that, on April 11, 2011, Dr. Ruiz prescribed a nasal spray to treat Mr. Castillo's sinus congestion and other symptoms. *See* Defs.' L.R. 56(a)1 Stmt., Attach. 1 at 59, ECF No. 47. Mr. Castillo claims that, shortly after he began using this medication, he determined that it was not effective in alleviating his symptoms. On April 24, 2011, he filed an Inmate Request indicating that the medication was not relieving his symptoms and that he was seeking treatment from a specialist. *See* Mem. Opp'n Mot. Summ. J., Ex. E, ECF No. 53 at 98. No one responded to this request. *See id.* On June 27, 2011, Mr. Castillo filed a second Inmate Request complaining that he had been seen by medical staff for other medical problems, but staff members had refused to address the problem with his sinus congestion. *See id.* at 99. He noted again that the medication prescribed by Dr. Ruiz was not alleviating his symptoms. *See id.* No one responded to this request. *See id.*

In May 2012, Mr. Castillo filed a third request regarding his sinus condition and sought treatment for it. *See id.* at 100. Nurse J. Boiano responded to the request that same day. *See id*. On June 6, 2012, he filed a Health Services Review request seeking to be treated by a physician for his sinus condition. *See id.*, Ex B, ECF No. 53 at 54-55. Medical Grievance Coordinator

Estrom responded to the Health Services Review request on June 21. 2012 and Dr. Ruiz examined Mr. Castillo on July 3, 2012. *See id.*, at 54; Ex. D, ECF No. 53 at 91.

Mr. Castillo states that, in accordance with State of Connecticut Department of Correction Administrative Directive 8.9, Administrative Remedy for Health Services, he attempted to exhaust his administrative remedies as to his medical claims by filing Inmate Requests in April and June 2011. *See* id., Ex. A-1, ECF No. 53 at 31-36 (Administrative Directive 8.9, Effective July 24, 2012). He claims that he filed the Inmate Requests in anticipation of filing a Health Services Review request at a later date. He contends that he was actively exhausting his administrative remedies during the time period from April 24, 2011 to at least June 6, 2012, when he filed his Health Services Review request.

Defendants argue that this contention is without merit based on the strict time-frames for filing and appealing grievances that are set forth in State of Connecticut Department of Correction Administrative Directive Administrative Directive 9.6, Inmate Administrative Remedies. *See* Defs.' L.R. 56(a)1 Stmt., Attach. 4, ECF No. 48-7 (Administrative Directive 9.6, Effective January 31, 2009). Defendants do not acknowledge or address the applicability of Administrative Directive 8.9 to Mr. Castillo's medical claims or the requirements for exhaustion of those claims under that Directive.

Mr. Castillo points out that Administrative Directive 8.9 does not provide for or require an appeal from the disposition of a Health Services Review request. *See* Mem. Opp'n Mot. Summ. J., Ex. A-1, ECF No. 53 at 33-34. In addition, there is no time period for the filing of informal requests for review or formal Health Service Review requests. *See id.* at 33. The Court notes, however, that the version of Administrative Directive 8.9 submitted by Mr. Castillo in

support of his memorandum in opposition to the motion for summary judgment includes a notation that it became effective on July 24, 2012 and superseded a prior version of the Directive dated June 30, 2009. *See id.* at 31. Thus, that version of Administrative Directive 8.9 was not in effect at the time Mr. Castillo was allegedly attempting to exhaust his administrative remedies as to his medical claims from April 2011 to June 2012.

Mr. Castillo has argued and provided evidence that he was attempting to exhaust his administrative remedies regarding his sinus condition as soon as April 24, 2011, and continued to attempt to exhaust his remedies until he filed a Health Services Review request in June 2012. Defendants have not addressed the sufficiency of Mr. Castillo's attempts to exhaust his administrative remedies under Administrative Segregation 8.9 or offered any evidence to suggest that Mr. Castillo's attempts did not constitute viable steps towards active exhaustion of his administrative remedies as to medical claims. Instead, they rely on a grievance process that is outlined in an administrative directive inapplicable to Mr. Castillo's medical claims.

The Court concludes that there are disputed issues of material fact regarding whether the filing of Inmate Requests by Mr. Castillo and a subsequent Health Services Review request constituted attempts to actively pursue the exhaustion of his remedies during the time period that he seeks to toll. Thus, on the present record, issues of fact preclude a determination of whether the statute of limitations should be tolled with regard to Mr. Castillo's claims of deliberate indifference to medical needs during the period from April 2011 to July 18, 2011. *See Doe v. Selsky*, 948 F. Supp. 2d 306, 310 (W.D.N.Y. 2013) ("Whether a statute of limitations was tolled can depend on the resolution of disputed issues of fact that are inappropriate to decide on a motion to dismiss or for summary judgment.") (citing *Independent Order of Foresters v. Donald,*

*Lufkin & Jenrette, Inc.*, 157 F.3d 933, 942 (2d Cir. 1998) ("we believe there are genuine issues of material fact that made erroneous on a summary judgment motion the district court's rejection of this [equitable tolling] basis for avoiding the limitations defense"); *In re Sumitomo Copper Litigation,* 194 F.R.D. 480, 482–83 (S.D.N.Y. 2000) (issue of whether the limitations period was tolled by defendants' alleged fraudulent concealment was a factual issue to be determined at trial), *appeal denied,* 262 F.3d 134 (2d Cir. 2001); *see also Lopez v. Bushey*, No. 11-cv-0148, 2013 WL 1294477, at *6 (N.D.N.Y. Mar. 4, 2013) (finding that "Plaintiff has raised a triable issue of fact that special circumstances justified his failure to properly exhaust his administrative remedies"), *report and recommendation adopted*, 2013 WL 1293819 (N.D.N.Y. Mar. 28, 2013)). Accordingly, the motion for summary judgment is denied.

### 3. Retaliation Claim

Defendants argue that Mr. Castillo's retaliation claim occurred in February 2011 and is barred by the statute of limitations. Mr. Castillo contends that the limitations period was tolled, while he attempted to exhaust his retaliation claim at least until August 2011. The Court agrees.

In response to the motion for summary judgment, Mr. Castillo has filed a copy of a Level 1 Grievance dated March 15, 2011, that includes his allegations that Officers Hogan and Johnson and Lieutenant Smith retaliated against him by refusing to provide him with medical treatment because he would not provide information during their investigation of gang activity on February 23, 2011. *See* Mem. Opp'n Mot. Summ. J., Ex. C, ECF No. 53 at 57–58. Mr. Castillo states that he filed the grievance with the grievance coordinator on March 15, 2011. *See id.*

In an Inmate Request dated March 20, 2011, and addressed to the grievance coordinator, Mr. Castillo refers to a separate grievance that he had re-filed and also to the grievance regarding

his retaliation claim. *See id.* at 65. He informed the grievance coordinator that he still had not received a receipt for his retaliation grievance, despite the grievance coordinator's assurance earlier that the receipt was on its way to him. *See id.* In an Inmate Request dated August 26, 2011, and addressed to the grievance coordinator, Mr. Castillo stated that he had still not received a receipt for his retaliation grievance, despite the grievance coordinator's repeated verbal assurances that it was on its way to him. *See id.* at 64. He asked for a receipt and a response to the Level 1 retaliation grievance because he understood from information provided him by the grievance coordinator that he could not file a Level 2 grievance, until he had received a response to the Level 1 grievance. *See id.*

Mr. Castillo argues that he did not file a Level 2 grievance or a new Level 1 grievance because of the information and assurances provided to him by the grievance coordinator, pertaining to the forthcoming receipt for his Level 1 grievance and the requirement that he receive a response to his Level 1 grievance before he could file a Level 2 grievance. Thus, Mr. Castillo claims to have been actively attempting to exhaust his administrative remedies regarding his retaliation claim under the Department of Corrections' grievance procedures until at least August 26, 2011, when he sent his last Inmate Request to the grievance coordinator.

Defendants argue, and Mr. Castillo does not dispute, that Administrative Directive 9.6 provides that an inmate may appeal to Level 2 if a response to the Level 1 grievance is not received within thirty business days after the receipt of the Level 1 grievance by the Unit Administrator. *See* Defs.' L.R. 56(a)1 Stmt., Attach. 4 at 6–7, ECF No. 48-7 (Administrative. Directive 9.6(6)(I)). Thus, Defendants contend that Mr. Castillo could or should have filed a Level 2 appeal, when he did not receive a response to the Level 1 grievance within thirty

business days. Defendants argue that he was not actively exhausting his remedies during the entire period prior to July 18, 2011 because he did not file a Level 2 appeal of his Level 1 grievance.

Defendants have not filed a reply to Mr. Castillo's submission of the March 15, 2011 grievance and March and August 2011 Inmate Requests. Nor have they responded to Mr. Castillo's explanation for his decision not to file a Level 2 appeal of his March 15, 2011, Level 1 grievance.

Mr. Castillo has submitted evidence of his attempts to exhaust his administrative remedies as to his retaliation claim, including a Level 1 grievance dated March 15, 2011, and that he continued to attempt to complete the exhaustion process until at least August 26, 2011. *See* Mem. Opp'n Mot. Summ. J., Ex. C, ECF No. 53 at 57-58. He states that the grievance coordinator indicated on multiple occasions that the grievance coordinator would send Mr. Castillo a receipt for the Level 1 grievance, but he never received a receipt. *See id.* at 64–65. The grievance coordinator also allegedly led Mr. Castillo to believe that he could not file a Level 2 appeal, until he had received a response to his Level 1 grievance. *See id.* at 64. When Mr. Castillo asked the Warden why he had not received a receipt for his retaliation grievance, the Warden referred him back to the grievance coordinator. *See id.*

Mr. Castillo therefore has created a genuine issue of material as to whether he was actively attempting to exhaust administrative remedies as to his retaliation claim from March 15, 2011 through at least August 26, 2011, based on the assurances of the grievance coordinator that a response or receipt for his retaliation grievance was forthcoming and that he needed the receipt or response to file a Level 2 appeal of the Level 1 grievance. Because, under Administrative

Directive 9.6(6)(I), a Level 1 reviewer is permitted thirty business days from the date of receipt of the Level 1 grievance to respond, it would follow that, if a Level 1 grievance is never received by the Level 1 reviewer then the time for filing an automatic appeal to Level 2 does not accrues. Thus, a reasonable juror could find that Mr. Castillo believed, in reliance on the grievance coordinator's instruction, that a receipt was forthcoming and that Mr. Castillo could not appeal to Level 2 because he had not received a receipt for his Level 1 grievance. *Szymanski v. Local 3, Int'l Bhd. of Elec. Workers*, 577 Fed. App'x 52, 53 (2d Cir. 2014) (noting that a statute of limitations defense is an affirmative defense and, thus, the defendant bears the burden of establishing by prima facie proof that the limitations period has run) (citing *Gonzalez*, 651 F.3d at 322).

"The 'catch–22' . . . is self-evident: the prisoner who files suit . . . prior to exhausting administrative remedies risks dismissal based upon § 1997e; whereas the prisoner who waits to exhaust his administrative remedies risks dismissal based upon untimeliness." *Gonzalez*, 651 F.3d at 323 (*Johnson v. Rivera*, 272 F.3d 519, 522 (7th Cir. 2001)). "[A]ny other interpretation of the PLRA could permit [prison officials] to exploit the exhaustion requirement through indefinite delay in responding to grievances." *Id.* (quoting *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002)).

Mr. Castillo thus has raised a genuine issue of material fact as to whether he is entitled to equitable tolling of the limitations period from March 15, 2011 through at least August 26, 2011, when he filed the last Inmate Request regarding the disposition of his Level 1 grievance. *See Robinson v. Ballard*, No. 913CV01213TJMTWD, 2017 WL 979047, at *13–14 (N.D.N.Y. Feb. 3, 2017), ("The Court finds that the statute of limitations on Plaintiff's § 1983 claims was

equitably tolled at the very least from July 17, 2010, through the end of January 2011, when Plaintiff stopped writing to DOCCS officials requesting a response to his grievance, and arguably through the time Plaintiff commenced this suit."), *report and recommendation adopted*, No. 913CV1213TJMTWD, 2017 WL 979039 (N.D.N.Y. Mar. 13, 2017). Based on the date this case was filed, July 18, 2014, together with the time period that the Court has determined the retaliation claim should be tolled, March 15, 2011 to August 26, 2011, the retaliation claim, which accrued on or about February 23, 2011, is not untimely.

Mr. Castillo has met his burden of showing a triable issue as to the timeliness of his retaliation claim.

### C.    The Eighth Amendment Claim

Defendants Ruiz, Garcia, Durato, Estrom, Stewart, Brown, Saraceno and Bouffard argue that they were not deliberately indifferent to Mr. Castillo's nasal condition during the time period from April 2011 to July 2012. Mr. Castillo contends that he has submitted sufficient evidence to demonstrate that Defendants' conduct constituted deliberate indifference to his serious medical need. The Court agrees, in part.

Deliberate indifference by prison officials to a prisoner's serious medical need constitutes cruel and unusual punishment in violation of the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). There is a subjective and an objective component to the deliberate indifference standard. *See Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006).

Objectively, the alleged deprivation of medical care must be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). A "sufficiently serious" deprivation exists if the plaintiff suffers from an urgent medical condition that is degenerative or is capable of causing

death or extreme or chronic pain. *See Brock v. Wright*, 315 F.3d 158, 163 (2d Cir. 2003) (citation omitted); *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (internal quotation marks and citations omitted). A medical condition may not initially be serious, but may become serious because it is degenerative, and if left untreated or neglected for a long period of time, will "result in further significant injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000) (citations omitted). The Second Circuit has identified several factors that are highly relevant to the inquiry into the seriousness of a medical condition: "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citations omitted).

With regard to the second element of the Eighth Amendment standard, a plaintiff must allege that, subjectively, the defendant prison official "act[ed] with a sufficiently culpable state of mind." *Id.* (internal quotation marks and citation omitted). Thus, the defendant must have been actually aware of a substantial risk that the inmate would suffer serious harm as a result of his or her actions or inactions and have disregarded that risk. *See Salahuddin*, 467 F.3d at 279-80. The fact that a prison official did not alleviate a significant risk that he should have but did not perceive does not constitute deliberate indifference. *See Farmer v. Brennan*, 511 U.S. 825, 838 (1994).

Mere disagreement with prison officials about what constitutes appropriate care does not state a claim cognizable under the Eighth Amendment. "So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an

Eighth Amendment violation." *Chance*, 143 F.3d at 703. Thus, the "essential test is one of medical necessity and not one simply of desirability." *Dean v. Coughlin*, 804 F.2d 207 215 (2d Cir. 1986) (internal quotation marks omitted).

Furthermore, negligence or medical malpractice claims are not cognizable under the Eighth Amendment. *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (observing that showing of medical malpractice is insufficient, on its own, to establish deliberate indifference). Thus, "not every lapse in prison medical care will rise to the level of a constitutional violation." *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003). In certain situations, however, "instances of medical malpractice may rise to the level of deliberate indifference, namely, when the malpractice involves culpable recklessness, i.e., an act or failure to act by the prison doctor evinces a conscious disregard of a substantial risk of serious harm." *Hathaway*, 99 F.3d at 553 (internal quotation marks and citation omitted).

## 1. Deprivation of Care

Defendants do not contest Mr. Castillo's assertion that he suffered from a serious medical need with regard to his sinus condition and symptoms associated with that condition.[4] Thus, the

---

[4] Obviously, given the fact-intensive nature of the inquiry, courts have reached differing results regarding the seriousness of an individual's sinusitis, sinus congestion or sinus infection. *Compare DeMartino v. Zenk*, No. 04-cv-3880 (SLT) (LB), 2009 WL 2611308 at *9 (E.D.N.Y. Aug. 25, 2009) (plaintiff's multiple medical conditions, including sinusitis and nasal and sinus polyps were sufficiently serious to satisfy the objective component of the Eighth Amendment) and *Marlin v. Jimenez*, No. 2:05CV00017JLH, 2006 WL 2547465, at *1, 18 (E.D. Ark. Aug. 31, 2006) (considering a prisoner's "sinusitis to constitute a serious medical need") *with Penland v. Bureau of Prisons*, No. 1:08CV1263(LO/TCB), 2010 WL 1039866, at *5 (E.D. Va. Mar. 17, 2010) (plaintiff's "chronic sinusitis and excessive tearing . . . fails to meet the requirements of a serious medical need."); *Mauchlin v. Beier*, Civil Action No. 07-cv-02593-CMA-MEH, 2010 WL 419397, at *5 (D. Colo. Jan. 28, 2010) (holding that a prisoner's "sinusitis is not sufficiently serious to trigger constitutional scrutiny" for a claim involving deliberate indifference to medical

Court assumes, for purposes of deciding this motion, that Mr. Castillo has satisfied the objective component of the standard. *See* Fed. R. Civ. P. 56(c) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . .); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("[A summary judgment] motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied.").

### 2. Deliberate Indifference

Defendants instead argue that Mr. Castillo has not met the subjective prong of the Eighth Amendment standard because Mr. Castillo cannot show the required *mens rea* as to Defendants' indifference to his sinus condition or symptoms. The Court disagrees, in part.

### a. Defendants Ruiz, Stewart, and Estrom

Mr. Castillo contends that, after Dr. Ruiz prescribed medication to treat his sinus condition, Mr. Castillo subsequently complained to Dr. Ruiz that the medication was not alleviating his symptoms, but Dr. Ruiz continued to prescribe the same medications. *See* Second Am. Compl. ECF No. 35 ¶¶ 7–8. Mr. Castillo also filed requests and a Health Services Review seeking re-evaluation of sinus condition and new treatment for the condition. *See id.* ¶¶ 9–11. He maintains that these requests and a grievance made Nursing Supervisor Durato, Medical

---

needs); *Simpson v. Prison Health Services, Inc.*, No. 1:09-cv-1167, 2010 WL 425159 at *3 (W.D. Mich. Jan. 27, 2010) (nasal dryness, sinusitis, and chronic sore throat not "conditions that threaten serious harm or death"); *Kemp v. Wright*, No. 01 CV 562 (JG), 2005 WL 893571, at *5 (E.D.N.Y. Apr. 19, 2005) (holding that a prisoner's sinusitis did not rise "to the level of a serious medical condition or need"); *Davidson v. Scully*, 155 F. Supp. 2d 77, 86 (S.D.N.Y. 2001) ("headaches, earaches, sinus congestion, soreness in his throat and eyes, tearing, nasal infections, and breathing problems" do not constitute serious medical conditions because they "do not produce death, degeneration, or extreme pain").

Supervisor Stewart, and Medical Grievance Coordinator Estrom and Nurse/Medical Grievance Coordinator Garcia aware of his sinus condition and his need for further or different treatment for the condition. *See id.* ¶¶ 9–10, 20. He claims that they failed to take any action to arrange for or provide him with treatment. *See id.* ¶¶ 9, 20– 21.

Defendants contend that they were not deliberately indifferent to Mr. Castillo's sinus condition because during the majority of his visits to the medical department during the relevant time, Mr. Castillo did not mention the sinus condition. Defendants' argument is based solely on the information in Mr. Castillo's medical records. Neither Nursing Supervisor Stewart, nor Dr. Ruiz, nor Medical Grievance Coordinator Estrom have filed affidavits in support of the motion for summary judgment.

In contrast, Mr. Castillo has testified that he voiced his concerns about treatment for his sinus condition at many of his medical visits during the period from April 2011 to July 2012, even though those visits may have involved diagnosis of and treatment for other medical conditions. *See* Pl.'s Aff., ¶¶ 27–29, ECF No. 53-1. He contends that none of the nurses or medical staff members would address his concerns or make a notation in his medical records that he had complained about or sought treatment for his sinus condition. In addition to the nine visits to the medical department referenced by Defendants, Mr. Castillo's medical records reflect two other visits during which Mr. Castillo raised the issue of his sinus condition. *See* Mem. Opp'n Mot. Summ. J., Ex. D, ECF No. 53, at 91; Ex, B, ECF No. 53 at 54.

In addition, Mr. Castillo has offered two inmate requests that he submitted to the Medical Supervisor at Cheshire in 2011, one in April and one in June. *See id.*, Ex. E, ECF No. 53 at 98– 99. In these requests, Mr. Castillo states that the treatment for his sinus condition has not

alleviated his symptoms and he seeks to be seen by a specialist or other physician. Mr. Castillo identifies Defendant B. Stewart as the Medical Supervisor at Cheshire. Mr. Castillo did not receive a response to either request for treatment. *See id.*

Defendants have not suggested that Medical Supervisor Stewart did not receive the Inmate Requests addressed to her in 2011. As a result, the Court concludes that there is an genuine issue of fact as to whether Medical Supervisor Stewart received the Inmate Requests and, if she did, whether her failure to respond or take any action to address Mr. Castillo's complaints regarding his sinus condition or schedule Mr. Castillo to be seen by a physician constituted deliberate indifference to Mr. Castillo's medical need.

With respect to Dr. Ruiz, Mr. Castillo contends that, although his medical records may not reflect it, on multiple occasions during the period from April 11, 2011, to July 19, 2012, he verbally mentioned to Dr. Ruiz, either when he would see him in the corridors of the medical or housing unit or during medical visits, that the medications prescribed in April 2011 were ineffective. *See* Pl.'s Aff., ¶¶ 27–29, ECF No. 53-1. During those times, Mr. Castillo requested further evaluation and treatment for his sinus condition. Mr. Castillo states that Dr. Ruiz either failed to take any action to address his complaints or simply re-prescribed the same medications that were not effective in treating his symptoms. *See* Mem. Opp'n Mot. Summ. J., Ex. D, ECF No. 53 at 75, 91. This is sufficient to demonstrate disputed issues of material fact as to whether Dr. Ruiz's continued failure to address or re-evaluate Mr. Castillo's sinus condition and the alleged ineffectiveness of previously prescribed medications during the period from April 2011 to July 2012 constituted deliberate indifference to that medical need.

Mr. Castillo also filed a Health Services Review regarding treatment for his sinus

condition on June 6, 2012. *See id.*, Ex. B, ECF No. 53 at 54–55. The request was received on June 21, 2012 by Medical Grievance Coordinator Estrom. *See id.* at 54. On that day, Estrom met with Mr. Castillo and explained the differences between nasal congestion and an infection. *See id.* Thus, Estrom became aware of Mr. Castillo's condition, at least as early as June 21, 2012. Mr. Castillo contends that she failed to take any action to immediately arrange for treatment for his sinus condition. Instead, she placed Mr. Castillo on a list to see a physician to diagnose and determine the appropriate treatment for his condition. *See id.* Defendants do not address whether the action by Estrom rose to the level of deliberate indifference to a serious medical need.

Because the record has no testimony from Dr. Ruiz, Medical Supervisor Stewart or Medical Grievance Coordinator Estrom, and taking into consideration Mr. Castillo's submission, a disputed issue of material fact exists as to whether Ruiz, Stewart, or Estrom was aware of Mr. Castillo's sinus condition and his complaints that the medication prescribed in April 2011 was ineffective and whether they took sufficient steps to address his medical condition. *See Security Ins. Co. of Hartford*, 391 F.3d at 83 ("If there is any evidence in the record from which a reasonable factual inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought . . . summary judgment is improper.").

Accordingly, the motion for summary judgment is denied as to the claims that Dr. Ruiz, Medical Supervisor Stewart and Medical Grievance Coordinator Estrom were deliberately indifferent to Mr. Castillo's sinus condition during the period of April 2011 to July 2012.

### b.    Defendants Bouffard and Saraceno

Mr. Castillo alleges that, on the morning of July 3, 2012, Captain Bouffard escorted him to a cell in the restrictive housing unit because Mr. Castillo had received a disciplinary report.

*See* Second Am. Compl. ¶ 13. Mr. Castillo complained to Captain Bouffard that he needed medical attention for an illness that he had been suffering from for over a year. *See id.* Captain Bouffard stated that it was not his responsibility and directed Mr. Castillo to contact the medical department. *See id.*

Mr. Castillo claims that, shortly after his placement in the restrictive housing unit, correctional staff removed his handcuffs and Nurse Kathy Saraceno checked his wrists. *See id.* ¶ 14. Mr. Castillo explained to Nurse Saraceno that he had been waiting to see a physician regarding his illness. *See id.* Nurse Saraceno allegedly warned Mr. Castillo that he should not file complaints against medical staff members because it would upset them. *See id.* She indicated that he would have to wait for a physician to treat him for his. *See id.*

These allegations, however, fall short of demonstrating a deliberate indifference to a medical need. Mr. Castillo does not allege that Captain Bouffard was employed by the medical department or that, as a correctional captain, Bouffard could provide any medical treatment to him. Furthermore, Mr. Castillo does not allege that Captain Bouffard denied him access to medical care; rather Captain Bouffard suggested that Mr. Castillo contact the medical department for treatment because he did not provide medical care to inmates.

The warnings given to or comments made to Mr. Castillo by Nurse Saraceno also did not deny Mr. Castillo medical treatment. She informed Mr. Castillo that he would have to wait for a doctor to provide him with medical treatment. Although Nurse Saraceno did not immediately offer to treat Mr. Castillo, Mr. Castillo's medical records reflect that later in the day on July 3, 2012, Dr. Ruiz examined Mr. Castillo regarding his complaints about his sinus condition and

referred him for a diagnostic x-ray of his sinuses. *See* Mem. Opp'n Mot. Summ. J., Ex. D, ECF No. 53 at 91.

The Court therefore concludes that the record lacks a genuine issue of material facts as to whether Captain Bouffard or Nurse Saraceno denied him access to medical treatment or were deliberately indifferent to his medical needs. Thus, the motion for summary judgment is granted as to Saraceno and Bouffard.

### c.     Defendants Durato, Brown and Garcia

Mr. Castillo alleges Nursing Supervisor Durato, Health Services Administrator Brown and Nurse/Medical Grievance Coordinator Garcia became aware of his medical condition because of his filing of "grievances and complaints." Second Am. Compl., ECF No. 35 at ¶ 9. Mr. Castillo has provided no evidence of the "complaints" that he may have filed during the period were addressed to or received by Durato, Brown or Garcia. As indicated above, Mr. Castillo filed two Inmate Requests in April and June 2011, but those requests were addressed to the medical supervisor at Cheshire. *See* Mem. Opp'n Mot. Summ. J., Ex. C, ECF No. 53 at 64-65. Mr. Castillo also filed an Inmate Request in May 2012 addressed to "sick call." *See id.*, Ex. E, ECF No. 53 at 100. Nurse Boiano responded to the request, provided medication to Mr. Castillo, contacted Dr. Ruiz regarding a medication re-fill for his condition, and referred him to a physician for examination. *See id.*, Defs.' L.R. 56(a)1 Stmt., Attach. 1 at 57, ECF No. 47. There is no evidence to suggest that defendants Durato, Brown, or Garcia were aware of this Inmate Request or involved in responding to the request.

Mr. Castillo only submitted one medical grievance during the period from April 2011 to July 19, 2012. *See* Mem. Opp'n Mot. Summ. J., Ex. B, ECF No. 53 at 54. As indicated above, on

June 6, 2012, Mr. Castillo filed a request for a Health Services Review regarding diagnosis of and treatment for his sinus condition. *See id.* Mr. Castillo contends that, when a grievance is filed by an inmate regarding medical treatment, medical staff become aware of the matter or issues in the grievance. Mr. Castillo has submitted no evidence to support this contention.

With respect to the June 6, 2012, Health Service Review, the evidence submitted by both Mr. Castillo and Defendants reflects that Medical Grievance Coordinator Estrom met with Mr. Castillo, discussed his concerns and then referred him to a physician for diagnosis and treatment. *See id.* Dr. Ruiz examined and referred Mr. Castillo for sinus x-rays on July 3, 2012 and Dr. O'Halloran examined, treated and prescribed medication to Mr. Castillo in July 19, 2012. *See* Mem. Opp'n Mot. Summ. J., Ex. D, ECF No. 53 at 91. There is, however, nothing in the record to suggest that defendants Durato, Brown, or Garcia were involved in or aware of the Health Services Review request or its disposition.

Mr. Castillo therefore has not provided evidence to support his assertion that Durato, Brown, or Garcia were aware of and deliberately indifferent to his sinus condition. Thus, he has failed to raise a genuine issue of material fact as to the subjective element of the Eighth Amendment standard. *See Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (noting that "conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist," nor can "mere speculation or conjecture as to the true nature of the facts" (internal quotation marks omitted)).

Accordingly, defendants Durato, Brown and Garcia are entitled to judgment as a matter of law on Mr. Castillo's claim that they were deliberately indifferent to his medical needs during

the period from April 2011 to July 2012. The motion for summary judgment is granted as to this Eighth Amendment claim against defendants Durato, Brown and Garcia.

**D.      Retaliation**

Defendants have not challenged Mr. Castillo's retaliation claim on its merits. The issue of retaliation therefore will be addressed at trial.

**IV.    CONCLUSION**

Defendants' Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part. The motion is granted as to whether Defendants Hogan, Smith, Johnson, Garcia, Mack, Guzman, Bartley, Waterford, Husband, Bernard and Saraceno were deliberately indifferent to Mr. Castillo's sinus condition during the time period from January 2011 to March 7, 2011 and the claims that defendants Durato, Brown, Garcia, Bouffard and Saraceno were deliberately indifferent to Mr. Castillo's sinus condition during the time period from April 11, 2011 to July 18, 2012.

The motion is denied as to the claim that Hogan, Johnson, and Smith engaged in retaliatory conduct in February 2011 and the claims that Ruiz, Stewart, and Estrom were deliberately indifferent to Mr. Castillo's sinus condition during the period from April 11, 2011 to July 18, 2012.

**SO ORDERED** at Bridgeport, Connecticut, this 31st day of March, 2018.

         /s/ Victor A. Bolden       
        VICTOR A. BOLDEN
        UNITED STATES DISTRICT JUDGE